Good morning. May it please the Court, Ryan Davis, Deputy Federal Public Defender, on behalf of Appellants Raymond and DeShawn Graham. I'd like to reserve two minutes of my time for rebuttal. There's really one issue in this case, which is whether the prosecutor purposely discriminated on the basis of race during jury selection. Seven jurors are at issue, and if the prosecutor struck even one of them on the basis of race, that violated the Equal Protection Clause. I want to focus in particular on Patricia W., the African-American prospective juror, who was the subject of the first bats in motion at trial. And more specifically, I want to focus on why the record does establish that the prosecutor struck Patricia W. on the basis of race. But first, a comment on the standard of review. This Court should review this issue de novo. That's because the trial court in this case failed to reach Step 3 in the Batson analysis. He denied the motion only because he found that the prosecutor's stated reasons were facially or inherently race-neutral. That's the issue at Step 2, but not at Step 3. And the State Appellate Court did not recognize or let alone rectify that error. Didn't the State Appellate Court say that the trial court, in fact, did apply the third step? Yes, the State Appellate Court found that there was an implicit or explicit determination at Step 3. That is clearly refuted by the record. And the magistrate judge, I would note, and the district court judge both agree that the trial court in this case, that the record does show that the trial court failed to reach Step 3. But I thought that the magistrate judge in this case didn't recognize or acknowledge the finding made by the appellate court in this case. I don't, did the magistrate judge actually say, State Appellate Court held that they reached Step 3. State Appellate Court is wrong. No, she did not. She missed it. Missed what the appellate court said on this issue, or at least didn't discuss it. Yeah, and I would say it's only the latter. And I would point out that she noted the State Appellate Court's finding when it came to the second motion. And noted that she needed to defer to that. So she was clearly aware of the need to defer to that determination. But she must have determined that that was refuted by the record here. And that indeed the trial court did make this error. So if we have a finding by the State Appellate Court that in fact the trial court did rate, did address the third step. How do we review that determination? You ask whether there's clear and convincing, I mean, that's presumed correct under Williams v. Woodford, and you ask whether there's clear and convincing evidence to refute that. And there is, and the reason there is, is because the trial court actually stated for the record his misunderstanding. So we get to de novo only after we answer that question first? That's correct. Okay. And I think it should be accounted for that the magistrate judge and the district court do agree with me on this point, that the trial court failed in this way. And do we have to conclude that the California Court of Appeal was unreasonable in concluding that the Superior Court judge inartfully expressed his reasoning with respect to the third step, but actually did do the third step? I don't think it should be both under 2254 E1 and 2254 D2. But this court has said in this context that when a state appellate court finds that the trial court did its job and followed Batson, that that should be reviewed under E1. So I think the question is only whether there's clear and convincing evidence in the record demonstrating that the trial court erred in this way. And I think there absolutely is, because the trial court, again, stated on the record, this is my understanding. My inquiry is limited to whether I can glean some reason that would cause an attorney to use a strike. But that is simply not the issue at step three. It's whether the prosecutor in this case- Well, these were actually his reasons. Yeah, exactly. And so given the fact that the trial court stated his misunderstanding on the record, I think it's entirely clear that the trial court erred in this way. So here's why the record does establish purposeful discrimination with respect to Patricia W. First, she was the only African-American juror, Ann, that made it into the panel, and the prosecutor struck her. Second, it's important to note that the trial court commented on the record that the prosecutor's reasons were not very good. As the Supreme Court has said, the critical question in step three is the persuasiveness of the prosecutor's reasons. And the trial court has this pivotal role to play, and his evaluation of the reasons were that they were not very good. So even if that isn't decisive in the appellant's favor, and I contend that it should be, it's at least highly relevant that the trial court's comments. But third, at least two of the prosecutor's reasons out of three, at least two, can't withstand scrutiny. The first was that Patricia W. had visited her grandson in prison. And the prosecutor said she's uncomfortable with anyone who has been inside a prison, including in that context. But two jurors served, number six and number 12, who also had relatives or close acquaintances or both, who had served time in prison. And the magistrate judge focused on the fact that the record doesn't indicate whether the jurors visited their relatives in prison. But the only reason that's the status of the record is because the prosecutor asked Patricia W. whether she had, and didn't ask any questions whatsoever of number six or number 12. And this court in Green v. Lamarck focused on that fact, the lack of a prosecutor's questions, that you would expect to see if her stated concerns were genuine. And in very similar facts to the issue there, the prosecutor had said that the juror had said she visited her stepfather in prison, and they didn't ask several other jurors who had said that they had relatives who had been arrested or convicted about whether they had visited their relatives in prison. So that's a crucial point. It's astonishing if we're to believe that the prosecutor was concerned about this, that she allowed two jurors to serve without even asking them this question. The second reason that the prosecutor gave was that Patricia W. had a brother who was an attorney. Now, he was a probate attorney. And the magistrate judge recognized that facts in the record actually suggest that this one was protectual. And those are the fact that the prosecutor accepted the panel several times with a joy P on the jury. It wasn't until the very end of jury selection that the defense struck her. And she had an uncle who was an attorney, in fact, a probate attorney. And in addition, the two alternate jurors who did serve in this case also had a brother who was an attorney, and in fact, he practiced criminal law. That's two of the three reasons that the prosecutor gave that clearly don't withstand scrutiny. This court has said when some or several of the reasons don't, that that's reason to doubt the prosecutor's credibility. What do you make of the rationale that both, I think, both the court of appeal and the magistrate judge gave that the prosecutor had, in fact, already accepted a jury composed of jurors including PW, one or two points? Right, so it's at one point she accepted the panel with Patricia W on it. I think there's nothing to make of that point because the prosecutor eventually did strike Patricia W. She had some reason when she did. And so it cuts both ways. Her reasons, whatever they were, weren't so overwhelming that she struck her at the very first opportunity. But eventually she struck her, I mean, at the second, I mean, she only accepted her once. So she had reasons, and the question for this court is, what were they? The cases that are usually cited for that point, or it's really a similar point, it's not the same point. It are cases where other jurors are, the prosecutor's accepting the panel with other minority jurors, not the one that's eventually struck. So she had a reason, she struck her. The question becomes, what was that reason? What do you do with the third reason, I'll call it the church lady reason? So I think the first two cast a shadow over it. That's one point. The second, though, it's also suspect because the prosecutor first didn't really ask follow-up questions at all about this juror's religion and how that might affect her as a juror. But also didn't ask any other jurors whatsoever. And it was the prosecutor's normal practice to ask, I mean, in this case anyway, to ask the entire panel a question at once. Does anybody here blank? And she didn't bother to ask the question, is anyone else here also closely involved with their church, for example? But wasn't, I mean, she was, her husband was the pastor of the church, right? So it's more than just being involved in the church, it was that her husband was the pastor of the church. That's correct. That's, I mean, that may distinguish her from the other jurors. I mean, it didn't come out that any other juror had a spouse that had that close of a relationship to the church. Yeah, but your point is the prosecutor didn't even bother to find out with respect to the other jurors. That's correct. And so, and again, I'm pointing to the fact that the other two reasons she gave clearly don't withstand scrutiny. And the fourth, I would call this a category of reasons, I see that my time is up. But is everything that we know about the Hispanic juror. So the prosecutor gave a series of unpersuasive, implausible reasons. That should all be brought to bear, not just with respect to whether those Hispanic jurors were struck for improper reasons. But also, do those reasons and what happened with respect to those jurors, does that, that raises a question about the prosecutor's credibility in general. It should also be then considered with respect to Patricia W.  Thank you. May it please the court. Vincent La Pietra on behalf of respondent. The district court properly determined that petitioners have failed to establish that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. With respect to the first Batson motion, the important thing here is that the state court of appeal conducted its own comparative analysis. And as the court noted in green, such a comparative analysis by the state court at the appellate level would cure any deficiency at the trial court at the third level. Do you agree that the trial court did not reach the third level? I do not, Your Honor. There's the presumption, well, first of all, the state court, as petitioners agree, stated that the state court, trial court implicitly made that determination. And this comports with the presumption that state courts know and apply the law. They clearly knew that there were three steps and how to apply them. And that is a reasonable determination. The reasonableness of the determination is born by the state court's comparative analysis, which again would cure any assumed deficiency at the trial court level beyond which petitioners under AEDPA cannot pass. The petitioners cite several reasons why they believe the comparative analysis was incorrect or reached the wrong conclusion. However, as the Supreme Court has routinely stated, debatable inferences from the facts are not sufficient to establish an unreasonable application of precedent. Here, the state appellate court clearly knew what its role was under Batson and applied it. And the decision is clearly understandable with respect to PW's prison visit and petitioner's argument with that. I would note that the trial court was the one asking all of the potential jurors whether or not they had been to prison. Or, I'm sorry, whether they had family members who had been to prison. The two jurors that petitioners cite, jurors 6 and 12, stated that very clearly, yes, I have a cousin-in-law as well as a nephew who are in prison for drugs at this location. And PW was the only one who had a much closer, familiar relationship, her grandson. And she claimed to not know at all why he was in prison in Los Angeles. And it was sort of that unusual answer, you don't know why your grandson is in prison, that prompted the prosecutor to further inquire when it was his turn to do so. And so that supports the State Court of Appeals comparative analysis, which they explicitly compared PW against these jurors and found that the record does not support a conclusion of pretext. For that reason- Actually, real quick, counsel, one of the reasons given as to a different juror was retail. Yes, Your Honor, in the second Batson. And when I tried cases as a prosecutor, I liked people who worked retail. So I'm just curious, is this something that the state prosecutors are being trained that retail jurors are bad? It's just an odd, I have to say, I'm not sure it's determinative in this case, but it's an odd reason to be given that someone works in retail as a reason to strike a juror. Yes, Your Honor, I do not know this county prosecutor. As I'm sure the court is aware, even hunches are sufficient as long as they're race neutral. In discussing it with colleagues, perhaps based upon the posture of the case and the witnesses, oftentimes retail employees, it's an entry level position and you're trained to be very customer oriented and non-critical of your customers. And in a case where you're really tasked with evaluating witness credibility, perhaps the prosecutor felt that retail employees weren't suited to that sort of- What he said was people who claim to be in retail don't go into any depth in that. It seems nonsensical. Again, I don't know the prosecutor and I didn't discuss this with him, but as the district court noted in its comparative analysis, the prosecutor was consistent in that reasoning in that he did strike others, non-minority jurors who were in retail. What county, what trial court was it? Which county? Is it Orange County? Orange County, yes, ma'am. Yes, Your Honor. I'm going to say some of the people I've seen at the return section at retail stores are some of the best interrogators I've ever met, so I'm a little surprised, but. That may be true. You'd think that a retail employee is particularly sensitive to theft. I mean, they're also trained to detect, report, and not particularly to like shoplifters. Now, this wasn't a shoplifting case, this was a violent robbery, but I mean, to expect that a retail person, because of his or her position as a retail clerk, should be sympathetic to or inclined to acquit people charged with armed robbery doesn't make a bit of sense to me. Yes, Your Honor. I would agree that some of the reasons are debatable, but as the Supreme Court has said, they don't necessarily need to be. Yes, I know, the prosecutor could have absolutely nonsensical reasons. On the other hand, if the reasons are nonsensical, that is some reason to at least think, you know, maybe that's not the real reason. Yes, Your Honor, which leads to the comparative analysis. And as the district court said, that may be a strange reason, but you consistently apply to it. What do you make of the argument with respect to the church lady reason, the third, that may be a supportable reason? The argument made by your adversary that, well, if he's really concerned about whether people are deeply involved with their church, and therefore it's a real reason why PW was disqualified, he never asked anybody else about their involvement with the church. How do you respond to that? Well, I believe- Or is the prosecutor he or she, I forget? I believe it's a she. A she, I'm sorry, yeah. Yeah, she is a she. I believe that the PW was the only one during the trial court's initial questioning, bringing up her connection with the church. And I could certainly understand- Did she bring it up spontaneously? I believe- Bring it up in response to a question, I can't remember. The typical questions in the trial court include the occupation of your spouse and other adults who live in the household. So she probably was responding to, I live with my husband and he does this. I can certainly understand why the prosecutor would not want to be interrogating everyone as to their possible connection with a church, and seem sort of anti-church in that regard. But PW addressed this, my husband is a pastor, and he followed up, she followed up on that. Unless there are any questions, respond to this. All right, thank you, counsel. Thank you, counsel. You are out of time, but I'll give you a minute for rebuttal. Thank you, Your Honor. Since you look anxious to get up here. It's true. And I think the most important point that I need to correct is that my adversary said that the district court correctly found that the state court decision was not unreasonable. With respect to the first motion, the district court did not find that. That is not a conclusion that the district court reached. The magistrate judge decided that we'd lose on a de novo review. But her view was the trial court did air. And also, it was mentioned that even if the trial court aired, the appellate court must have corrected it because the appellate court engaged in some comparative juror analysis. But if you grant the argument that the trial court failed, it's impossible to conclude that the appellate court corrected that error because the appellate court stated that it was only reviewing whether the record had that minimal evidence necessary to accept the trial court's finding. So the appellate court didn't even purport to correct the problem or to make an original step three finding in the first instance. All right, thank you. Thank you, counsel. Graham B. Harrington is submitted. We'll take up Diaz versus Lowe.
judges: Wardlaw, Fletcher, Owens